# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MICHAEL MARCAVAGE,                         :
    Plaintiff,                               :
                                 :        CIVIL ACTION
                v.                         :
                                 :        NO. 09-CV-4569

BOROUGH OF LANSDOWNE,                       :
PENNSYLVANIA, MICHAEL J.                    :
JOZWIAK,                                    :
    Defendants.                              :
                                 :
                                 :
                                 :

October 19__, 2011                                          **Anita B. Brody, J.**

## MEMORANDUM

Plaintiff Michael Marcavage owns several rental properties in the Borough of Lansdowne ("Lansdowne" or the "Borough"). Defendant Lansdowne Code Enforcement Officer Michael J. Jozwiak posted notices on Marcavage's properties informing Marcavage that he was not in compliance with a Lansdowne ordinance that required Marcavage to obtain rental licenses for his properties. Marcavage has brought suit against Defendants Borough of Lansdowne and Jozwiak claiming that Lansdowne's original rental ordinance and amended rental ordinance are unconstitutional, and seeking relief under 42 U.S.C. § 1983. The parties have filed cross-motions for summary judgment. Defendants move for summary judgment against Marcavage's Amended Complaint on the basis that the rental ordinances are not unconstitutional, and that Jozwiak is entitled to qualified immunity. Marcavage moves for partial summary judgment in favor of his Amended Complaint on the basis that the rental ordinance is facially

1

unconstitutional.  For the reasons that follow, I will grant Defendants' motion for summary

judgment, and will deny Marcavage's cross-motion for partial summary judgment.

## I. BACKGROUND[1]

The facts of this case are essentially undisputed.  On May 7, 2003, Lansdowne adopted

Ordinance 1188, which required anyone owning rental properties in Lansdowne to obtain an

annual rental license.  Specifically, Section 265-4 provided that:

> It shall be unlawful for the owner of any premises or any agent acting for such an owner
> to operate, rent or lease any premises or any part thereof, whether granted or rented for
> profit or nonprofit, or to represent to the general public that a premises or any part thereof
> is for rent, lease or occupancy without first acquiring [a rental license] issued by the Code
> Department in the name of the owner, local agent or operator and for the specific rental
> unit.

Lansdowne Code § 265-4 (2003).  In order to obtain a license, a property owner had to, *inter*

*alia*, arrange for a rental license inspection by Lansdowne's Code Enforcement Division.  Id.

The scope of the inspection included the exterior and interior areas of the rental unit.  Id. § 265-

7(D).  Furthermore, in making such an inspection, a Lansdowne Code Enforcement Officer was

to inspect any owner-occupied portion of a rental property (i.e., landlord-occupied unit within a

larger apartment building of tenant-occupied units), including its interior.  Id.  §§ 265-4(D), 265-

7(E).

---

[1] For purposes of summary judgment, "the nonmoving party's evidence is to be believed, and all
justifiable inferences are to be drawn in [that party's] favor."  Hunt v. Cromartie, 526 U.S. 541,
552 (1999) (internal quotations omitted).  "[W]here, as was the case here, the District Court
considers cross-motions for summary judgment 'the court construes facts and draws inferences in
favor of the party against whom the motion under consideration is made.'"  J.S. ex rel. Snyder v.
Blue Mountain Sch. Dist., --- F.3d ---, 2011 WL 2305973, at *6 (3d Cir. 2011) (en banc)
(quoting Pichler v. UNITE, 542 F.3d 380, 385 (3d Cir. 2008)) (internal quotation marks omitted).
Because of my conclusion that Defendants' motion for summary judgment should be granted, all
facts will be construed in favor of Marcavage.

An applicant for a rental license was responsible for "contact[ing] the Code Department [to] schedule all inspections" and making such inspection requests "no less than 48 hours prior to the time of inspection." Id. § 265-7(A)-(B).  If, during an inspection, a Code Enforcement Officer found a code violation, Lansdowne would issue a notice of violation. Id. § 265-5.  Any rental unit found to have code violations was to "be brought into compliance . . . within a time frame to be determined at the discretion of the Code Officer." Id.  Additionally, "[i]f any building . . . [was] proposed to be . . . maintained or used in violation [of the Ordinance], the Code Enforcement Officer [could], in addition to other remedies, institute in the name of the Borough any appropriate action or proceedings to prevent, restrain, correct or abate such building . . . or to prevent . . . any act, conduct, business or use constituting such violation." Id. § 265-10(C).  Upon receiving a notice of violation or decision of the Code Enforcement Officer, a property owner could appeal the decision or petition Lansdowne for a variance from the "strict letter" of the Lansdowne Code. Id. § 265-12.  Anyone who violated or failed to comply with Ordinance 1188 would be subject to a fine or imprisonment, or both. Id. § 265-14.

Marcavage owns a two-unit apartment house at 62 East Stewart Avenue ("Stewart Avenue Property") in Lansdowne.  Marcavage maintains his principal residence in one unit of the Stewart Avenue Property, and the other unit is leased to a tenant.  The Stewart Avenue Property is a two-story building with the leased unit on the second floor above Marcavage's residence. Each unit has a separate entrance, and there are no interior common areas.  Marcavage owns another two-unit apartment house at 34 East Stratford Avenue ("Stratford Avenue Property") in Lansdowne.  Each unit at the Stratford Avenue Property is leased to a tenant.  The units of the Stratford Avenue Property have separate entrances, but share a common exterior door.

3

Marcavage has owned these properties since the enactment of Ordinance 1188.

Marcavage received yearly notices from the Borough that his properties needed a rental license

inspection.  Defs.' Mot. Summ. J. Ex. D, Marcavage Dep. 50:23-52:24.  Over this time period,

however, Marcavage never requested an inspection.  Instead, he contacted the Borough on

multiple occasions, by phone and by email, to express his objections with the rental inspection

process—particularly the lack of a warrant requirement for the inspection.  Id. at 50:3-52:18,

60:11-61:4.  In one particular email, on August 15, 2008, Marcavage "urge[d]" Jozwiak "to cease

and desist from pursuing legal action against landlords at this point for non-compliance to

[Ordinance 1188] that is clearly unconstitutional."  Am. Compl. Ex. D.

On September 30, 2009, identical notices (the "Notices") were posted at both the Stewart

and Stratford Avenue Properties.  One was posted on the common exterior door for the Stratford

Avenue Property, and one was posted on the door of Marcavage's residence at the Stewart

Avenue Property.  Each notice stated the following:

## NOTICE

This Structure has been Declared an
Unlawful Rental Property
for failure to obtain the required rental license.
It is Unlawful for Landlord to collect any Rent, Use, or
Occupy This Building After 9/30/09 or until a rental license has been
obtained from the Borough of Lansdowne.
Any Unauthorized Person Removing This Sign
WILL BE PROSECUTED.

Pl.'s Counter-Statement of Undisputed Facts ¶ 16.  The Notices included Jozwiak's name and

title.  Id.  The Notices did not inform Marcavage of how he might appeal or contest the

Borough's decision.

Marcavage alleges that as a result of the Notice on the Stewart Avenue Property, he was forced from his home and spent the nights of October 1, 2009 and October 2, 2009 in a hotel, and the nights of October 3, 2009 and October 4, 2009 in the homes of acquaintances. Pl.'s Mot. TRO & Prelim. Inj., Marcavage Decl. ¶¶ 22, 23.

On October 5, 2009, Marcavage filed the instant suit, along with a motion for a temporary restraining order seeking to enjoin the Defendants from enforcing the Notices or commencing any process against him for residing at his home. ECF Nos. 1, 3. In a hearing on October 5, 2009, the Defendants agreed to refrain from taking any further action against Marcavage until the resolution of this case. ECF No. 5. As a result, Marcavage returned to his house on October 5, 2009. Defs.' Mot. Summ. J. Ex. D, Marcavage Dep. 87:10-13.

On April 21, 2010, Lansdowne passed Ordinance 1251 that amended Ordinance 1188.[2] Ordinance 1251 added a subsection clarifying certain rights and remedies of owners and occupants of property subject to the rental inspection requirement. Id. § 265-10(E). Specifically, subsection 10(E) provided for the following:

> The owner, occupant, tenant or person in charge of any property or rental unit possesses the right to deny entry to any unit or property by a Code Enforcement Officer for purposes of compliance with this chapter. However, nothing in this chapter shall prohibit a Code Enforcement Officer from asking permission from a owner, occupant, tenant or person in charge of property for permission to inspect such property or rental unit for compliance with this chapter and all other applicable laws, regulations and codes, to seek a search

--------

[2] In his briefs, Marcavage refers to the new ordinance as "Ordinance 2151," while Defendants refer to the ordinance as "Ordinance 1251." Both parties provide copies of the amended Chapter 265 of the Borough Code, with one stating the ordinance is "Ordinance 1251," and the other stating the ordinance is "Ordinance 2151." See Defs.' Mot. Summ. J. Ex. D; Pl.'s Mot. Partial Summ. J. Ex. A. The difference is trivial. I will refer to the amended ordinance as "Ordinance 1251."

warrant based on probable cause or to enter such property or rental unit in the case of emergency circumstances requiring expeditious action.

Id.  After Ordinance 1251 was passed, Marcavage filed an Amended Complaint, seeking the following relief: (1) declaratory relief, declaring Ordinance 1251 unconstitutional, both facially and as applied; (2) injunctive relief under 42 U.S.C. § 1983 in the form of a permanent injunction against the Defendants from enforcing Ordinance 1251; and (3) damages under § 1983 against the Defendants resulting from their allegedly dispossessing Marcavage from his residence.[3]

## II. LEGAL STANDARD

Summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  There is a "genuine" issue of material fact if the evidence would permit a reasonable jury to find for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The "mere existence of a scintilla of evidence" is insufficient.  Id. at 252.

The moving party must make an initial showing that there is no genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The nonmoving party must then "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial."  Id. at 322; see also Fed. R. Civ. P. 56(c)(1).  The nonmoving party must "do more than simply show that there is some metaphysical

---

[3]Although in his Amended Complaint Marcavage attacks the application of Ordinance 1251 as a violation of his Fourth and Fourteenth Amendment rights, the only application to him was of Ordinance 1188, not Ordinance 1251.  Therefore, in assessing the merits of Marcavage's as-applied claims, I will look to Ordinance 1188.  The distinction ends up being irrelevant, however, as no material differences exist between the two Ordinances that would alter the constitutional analysis.

doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  In determining whether the nonmoving party has established each element of its case, the court must draw all reasonable inferences in the nonmoving party's favor.  <u>Id.</u> at 587.

## III. DISCUSSION

Marcavage seeks a declaratory judgment that Ordinance 1251 is unconstitutional facially, and that Ordinance 1188 was unconstitutional as-applied to Marcavage, under the following constitutional provisions: (1) Fourth Amendment right to be protected from unreasonable searches and seizures, (2) Fourteenth Amendment right to procedural due process, and (3) the Fourteenth Amendment right to equal protection.  He also requests a permanent injunction to prohibit the Defendants from enforcing the sections of Ordinance 1251 that require an inspection of his properties prior to his obtaining a rental license.  Lastly, he seeks damages, under § 1983, from Defendants for their actions that allegedly evicted Marcavage from his home in violation of the Fourth and Fourteenth Amendments.  Defendants deny that Ordinance 1251 violates any of these constitutional rights, and also argue that Jozwiak is protected by qualified immunity from liability for Marcavage's § 1983 claim.

## A. Constitutional Claims

Before addressing the merits of a particular constitutional attack, a court must first address the nature of the constitutional claim—whether facial or as-applied.  "A facial attack tests a law's constitutionality based on its text alone and does not consider the facts or circumstances of a particular case." <u>United States v. Marcavage</u>, 609 F.3d 264, 273 (3d Cir. 2010).  A party making a facial challenge "must establish that no set of circumstances exists under which the Act would be valid." <u>United States v. Salerno</u>, 481 U.S. 739, 745 (1987).

7

Therefore, to establish a facial attack, Marcavage must demonstrate that the "[Ordinance] is unconstitutional in all its applications." Wash. State Grange v. Wash. State Republican Party, 552 U.S. 442, 449 (2008) (citation omitted). Considering this burden, facial attacks are the "most difficult to mount successfully." Salerno, 481 U.S. at 745. On the other hand, an as-applied challenge "does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right." Marcavage, 609 F.3d at 273. Marcavage brings a facial attack to Ordinance 1251 and an as-applied attack to Ordinance 1188 for violations of the Fourth Amendment right to be protected from unreasonable searches and seizures, Fourteenth Amendment right to procedural due process, and Fourteenth Amendment right to equal protection. I will first address Marcavage's facial challenges to Ordinance 1251, then turn to his as-applied challenges to Ordinance 1188.

   *1. Facial Challenges*

      *i. Unreasonable Search and Seizure*

   Marcavage argues that Ordinance 1251, the amended ordinance, violates the Fourth Amendment because it requires a search of a landowner's private property—both a landlord's own residence (if attached to a rental unit) and other leased units—without a warrant based on probable cause.

   The Fourth Amendment, applicable to the states through the Fourteenth Amendment, states that "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . ." U.S. Const. amend. IV. "The touchstone of Fourth Amendment

analysis is whether a person has a 'constitutionally protected reasonable expectation of privacy.'" Calif. v. Ciraolo, 476 U.S. 207, 211 (1986).  A party can challenge the search by a third party only if that party has a reasonable expectation of privacy in the area searched.  Minnesota v. Olson, 495 U.S. 91, 95 (1990).

It is undisputed that the Fourth Amendment protects a person's privacy in her home. Silverman v. United States, 365 U.S. 505, 683 (1961) ("At the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.").  Courts have also held, however, that a landlord does not have a reasonable expectation of privacy with respect to individual apartments leased to third parties, simply on the basis that the landlord owns the apartments.  See Rozman v. City of Columbia Heights, 268 F.3d 588 (8th Cir. 2001) (holding that landowner lacked standing to assert his tenants' rights in seeking to challenge the searches of tenants' apartments, without their permission, pursuant to city ordinance requiring annual rental inspection); Miller v. Hassinger, 173 Fed. Appx. 948, 952 (3d Cir. 2006) (non-precedential) (finding that landlord had no privacy interest in the apartment searched, where it had been leased to third parties, and landlord did not have access to the apartment, did not have personal items in the apartment, and did not allege any access to the apartment); Mangino v. Incorporated Village of Patchogue, 739 F. Supp. 2d 205, 234 (E.D.N.Y. 2010) ("A landlord generally does not have a reasonable expectation of privacy with respect to property that he has rented to a tenant and that is occupied by that tenant"); Reedy v. Borough of Collingswood, No. 04-cv-4079, 2005 WL 1490478, at *5 (D.N.J. June 22, 2005) ("[T]here is a diminished nature of the landlord's privacy interest in an apartment which he is making available for rent.").

9

This distinction is blurred here, where of the four units in question, three have been made available for rent and one is being used by the landlord as a primary place of residence.  In his motion for partial summary judgment, Marcavage asserts that Ordinance 1251 violates the Fourth Amendment because it compels a landlord to authorize entry by the Borough, without a warrant, into tenant-occupied residences. In response, Defendants argue that Marcavage has no standing to "assert[] causes of action on behalf of his tenants by stating that he cannot be compelled to authorize entry into his tenant-occupied residences." Defs.' Resp. 5.  While Marcavage does correctly note that he has a privacy interest in his own residence, he fails to brief the issue of the appropriate expectation of privacy for his rental units.  Marcavage has failed to offer any particular facts or circumstances to establish that he has a reasonable expectation of privacy in his rented units.  Thus no genuine issue of material fact exists as to whether Marcavage has standing to bring causes of action based on Fourth Amendment violations with respect to his rental units or on behalf of his tenants.[4]

Even though Marcavage has a privacy interest in his own residence, he still must show that the law violated that interest.  Marcavage bases his argument completely on the Supreme Court's ruling in Camara v. Municipal Court of City & County of S.F., 387 U.S. 523 (1967).  At issue in Camara was the constitutionality of two San Francisco ordinances.  The first ordinance

---

[4]To the extent Marcavage, in his Amended Complaint, further attacks the constitutionality of the Ordinances on behalf of his tenants or with regard to his tenant-occupied residences, he fails to brief the issue of his standing to bring such claims or the merits of such claims.  Therefore, those arguments are deemed to have been waived.  See, e.g., Hackett v. Cmty. Behavioral Health, No. 03-6254, 2005 WL 1084621, at *6 (E.D. Pa. May 6, 2005) (failure to address claims waives opportunity to contest summary judgment on that ground).

permitted city inspectors to enter any building for purposes of inspection.  Specifically, it provided that:

> Authorized employees of the City departments or City agencies, so far as may be necessary for the performance of their duties, shall, upon presentation of proper credentials, have the right to enter, at reasonable times, any building, structure, or premises in the City to perform any duty imposed upon them by the Municipal Code.

Camara, 387 U.S. at 526.  A separate San Francisco ordinance set out criminal penalties for property owners who refused to permit city inspectors to enter a building to perform an inspection.[5]  Plaintiff Camara was a San Francisco property owner who was prosecuted for failure to allow an inspector to enter his property, and who challenged the constitutionality of the ordinances on Fourth Amendment grounds.  The Supreme Court struck down Camara's prosecution, holding that the San Francisco ordinances authorized warrantless searches in violation of the Fourth Amendment.  Marcavage argues that for the same reason, Ordinance 1251 is facially unconstitutional under the Fourth Amendment.  This is simply not so.

The San Francisco ordinances at issue in Camara empowered government employees to enter premises in the name of an inspection, subject to no limitations.  Under the ordinances, an inspector was given the "right to enter, at reasonable times, any building . . . to perform any duty imposed upon them by the Municipal Code."  Camara, 387 U.S. at 526.  There was no limitation

---

[5] That Ordinance provided that: "[a]ny person, the owner or his authorized agent who violates, disobeys, omits, neglects, or refuses to comply with, or who resists or opposes the execution of any of the provisions of this Code . . . shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine not exceeding five hundred dollars ($500.00), or by imprisonment, not exceeding six (6) months or by both such fine and imprisonment, unless otherwise provided in this Code, and shall be deemed guilty of a separate offense for every day such violation, disobedience, omission, neglect or refusal shall continue."  Camara, 387 U.S. at 526.

on the number of inspections that could be made, nor any justification or cause that needed to be offered. An inspector could simply demand entrance into any city unit. Indeed, the second ordinance at issue prevented unit owners from excluding inspectors from entering by criminalizing the act of resisting entrance by an inspector. Under these ordinances, the city had unfettered discretion to enter any unit, and unit owners were powerless to stop them. In holding these ordinances unconstitutional, the Supreme Court emphasized that this discretion was problematic:

> [O]nly by refusing entry and risking a criminal conviction can the occupant at present challenge the inspector's decision to search. . . . The practical effect of this system is to leave the occupant subject to the discretion of the official in the field. This is precisely the discretion to invade private property which we have consistently circumscribed by a requirement that a disinterested party warrant the need to search.

Id. at 532-33.

The Supreme Court also carefully noted that the San Francisco ordinances permitted searches without a property owner's consent, and that refusal to consent was actually criminalized. Specifically, the Court noted that "a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant" and that "most citizens allow inspections of their property without a warrant." Id. at 528-29, 539. Indeed, in Wyman v. James, 400 U.S. 309 (1971), decided just five years after Camara, the Court upheld an ordinance that required a home inspection in order to investigate safety conditions for children on welfare because "the visitation in itself [wa]s not forced or compelled" and the only consequence of refusing to consent to an inspection was the loss of welfare funding. Id. at 317. Wyman is controlling.

Ordinance 1251 has neither of the defining features in <u>Camara</u>—Ordinance 1251 does not afford the Borough unfettered discretion in entering a unit, and there are no criminal penalties attached to a property owner's refusal to consent to a search.  Section 265-10(E) of the Ordinance provides that a property owner has "the right to deny entry to any unit or property by a Code Enforcement Officer."  Landsdowne Code § 265-10(E).  Furthermore, it states that a Code Enforcement Officer may ask permission from a property owner to inspect such property, "seek a search warrant based on probable cause or [] enter such property . . . in the case of emergency circumstances requiring expeditious action."  <u>Id.</u>  As such, a property owner like Marcavage can easily refuse to consent to a search.[6]  Like the ordinance in Wyman, Ordinance 1251 does not force or compel an inspection, as the only consequence of failing to consent to a search is the denial of a rental license.[7]  Fines and criminal prosecution are only possible under Ordinance 1251 if a property owner, after having failed to obtain a rental license, leases his property to a third party or represents to the public that his property is for rent, use, or occupancy.

Additionally, the inspections provided for in Ordinance 1251 are more limited in scope and number than those found in the San Francisco ordinances.  Under the San Francisco ordinances, an inspector was given the "right to enter, at reasonable times, any building . . . to

---

[6]Indeed, Marcavage did just that, and his property was never ultimately searched.

[7]Marcavage very briefly appears to argue that conditioning a property owner's ability to rent his property on obtaining a rental license and having a rental inspection, is a violation of the Takings Clause.  Even if the Takings Clause were implicated in this case, the Supreme Court has made clear that in order to raise a Takings Clause argument, a Plaintiff must first exhaust all state court remedies available.  <u>Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City</u>, 473 U.S. 172 (1985).  Here, Marcavage appears neither to have filed a case in state court nor to have administratively challenged his alleged eviction notice.

perform any duty imposed upon them by the Municipal Code."  Camara, 387 U.S. at 526.

Ordinance 1251, on the other hand, provides for periodic inspections of rental properties, or

owner-occupied portions of rental properties.  Those inspections are scheduled by a rental license

applicant, not a Code Enforcement Officer, and require at least forty-eight hours notice.

Lansdowne Code § 265-7(A)-(B).  Furthermore, the purpose and justification behind the

inspections (condition to receiving a rental license) are more narrow and specific than those

supporting the inspections under the San Francisco ordinances.

Marcavage has not offered any reason why, despite lacking these two defining features,

Ordinance 1251 violates the Fourth Amendment.[8]  He does not explain why other courts that

have considered comparable provisions have upheld them.  See, e.g., Platteville Area Apartment

Ass'n v. City of Platteville, 179 F.3d 574, 576-77, 582 (7th Cir. 1999) (upholding city ordinance

authorizing periodic searches of rental properties to assess compliance with city's housing code);

Rozman, 268 F.3d at 590-91 (finding city's decision to revoke a landlord's rental license

"because he refused to notify his tenants of [an] upcoming inspection" in accordance with city

ordinance to be constitutionally permissible).  Marcavage has neither acknowledged nor

_____

[8]Marcavage repeatedly argues that the Borough's inspection program is unconstitutional under
Camara because it is based upon "appraisal of conditions in an area as a whole" and not on
"knowledge of conditions in each particular building."  Marcavage misunderstands and
misquotes Camara in making this assertion.  In Camara, the Court actually declared "area code-
enforcement inspections" to be reasonable because of "a number of persuasive factors": their
"long history of judicial and public acceptance," the public interest in preventing latent,
dangerous conditions, and their "relatively limited invasion of the urban citizen's privacy."
Camara, 387 U.S. at 537.  Of course, probable cause to make such an administrative inspection is
still necessary, but the Court noted such cause may exist "if based upon the passage of time, the
nature of the building . . . , or the condition of the entire area, [and] will not necessarily depend
upon specific knowledge of the particular dwelling."  Id. at 538.

distinguished <u>Wyman</u>, which upheld an ordinance that appears to be more similar to Ordinance 1251 than the ordinances in <u>Camara</u>.  In short, Marcavage has failed to demonstrate that Ordinance 1251 is facially unconstitutional under the Fourth Amendment.

*ii. Procedural Due Process*

Marcavage next attacks Ordinance 1251 on the ground that it is facially unconstitutional for violating "his right to freedom from denial of right to property without due process of law under the Fourteenth Amendment."  Am. Compl. ¶ 45.  "The fundamental requirement of [procedural] due process is the opportunity to be heard at a meaningful time and in a meaningful manner."  <u>Mathews v. Eldridge</u>, 424 U.S. 319, 333 (1976) (citations and internal quotation marks omitted).  The text of Ordinance 1251 provides that "[t]he owner, applicant, or agent [of the property] may appeal a decision of the Code Enforcement Officer or request a modification of the strict letter of this chapter in accordance to the Borough Code."  Lansdowne Code § 265-12. Defendants argue that this process is sufficient on its face to allow property owners to challenge or seek modifications of Borough decisions.  In response, Marcavage essentially reargues his Fourth Amendment challenge to Ordinance 1251, relying on general statements of law that fail to advance his procedural due process claim.  He fails to explain how Section 265-12 is "incapable of any valid application," and therefore facially unconstitutional for violating the Fourteenth Amendment's right to procedural due process.  <u>Steffel v. Thompson,</u> 415 U.S. 452, 474 (1974). In fact, he even concedes that Ordinance 1251 provides for appeals of decisions by Code Enforcement Officers.  Pl.'s Resp. 7.  Therefore, Marcavage's facial challenge to Ordinance 1251 based on a "denial of right to property without due process" fails.

### iii.  Equal Protection

Finally, Marcavage asserts that Ordinance 1251 is facially unconstitutional on equal protection grounds, because it requires an inspection of owner-occupied residences in buildings also containing rental units, whereas owners of residences unattached to any rental property are not required to submit to an inspection.

The Equal Protection Clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  The Equal Protection Clause "'requires that all persons subjected to . . . legislation shall be treated alike, under like circumstances and conditions, both in the privileges conferred and in the liabilities imposed.'  When those who appear similarly situated are nevertheless treated differently, the Equal Protection Clause requires at least a rational reason for the difference, to assure that all persons subject to legislation or regulation are indeed being 'treated alike, under like circumstances and conditions.'"  Engquist v. Oregon Dep't of Agric., 553 U.S. 591, 602 (2008) (quoting Hayes v. Missouri, 120 U.S. 68, 71-72 (1887)).[9]

Under rational basis review, "legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest."  Lawrence v. Texas, 539 U.S. 558, 579 (2003) (quoting Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985)).  "Under rational-basis review, where a group possesses distinguishing characteristics relevant to interests the State has the authority to implement, a State's decision to act on the basis of those differences does not give rise to a constitutional violation.  Such a

---

[9] Marcavage concedes that the law should be considered under rational basis review.  ECF No. 43 at 19.

classification cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." Bd. of Trustees of Univ. of Ala. v. Garrett, 531 U.S. 356, 367 (2001) (quoting Cleburne, 473 U.S. at 441) (citation and internal quotation marks omitted).

"A State, moreover, has no obligation to produce evidence to sustain the rationality of a statutory classification.  A legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data." Heller v. Doe, 509 U.S. 312, 320 (1993) (citations and internal quotation marks omitted).  "[T]he burden is upon the challenging party to negative 'any reasonably conceivable state of facts that could provide a rational basis for the classification.'" Garrett, 531 U.S. at 367 (quoting Heller, 509 U.S. at 320).

The Borough Council identified the legislative purpose for Ordinance 1251 in Section 265-1.  It states that "[t]he purpose of this chapter . . . shall be to protect and promote the public health, safety and welfare of its citizens . . . and to encourage owners and occupants to maintain and improve the quality of rental units within the community." Lansdowne Code § 265-1. Marcavage does not explain why this offered basis is not rational; he simply states that it is not. This is not enough.  Lansdowne's offered basis is conceivably rational; there may be code violations in a property owner's unit—for example, faulty electrical wiring or fire hazards—that could present health and safety concerns to the neighboring renter.  Marcavage has not met his burden in showing that this basis is insufficient to survive rational basis review.  Thus, Marcavage's facial attack to Ordinance 1251 on equal protection grounds fails.

*2. As-Applied Challenges*

*i. Unreasonable Seizure*

Although Marcavage does not clearly spell out his as-applied challenge under the Fourth Amendment, his briefings suggest that he believes the Defendants' application of Ordinance 1188, the original ordinance, violated his Fourth Amendment right against unreasonable seizures. Marcavage claims that although his property was never searched by Defendants, it was seized, as a result of his being dispossessed from his home by Jozwiak's posting of the Notice on the door of his residence.

Under the Fourth Amendment, a "seizure" of property "occurs when there is some meaningful interference with an individual's possessory interests in that property." Soldal v. Cook Cnty., 506 U.S. 56, 61 (1992) (citation and internal quotation marks omitted). "[S]eizures of property are subject to Fourth Amendment scrutiny even though no search within the meaning of the Amendment has taken place." Id. at 68. This Fourth Amendment right against unreasonable seizure is "transgressed if the seizure of [a person's] house was undertaken to . . . verify compliance with a housing regulation, effect an eviction by the police, or on a whim, for no reason at all." Id. at 69.

Marcavage claims that he was "seized' under the Fourth Amendment because the Defendants' application of Ordinance 1188—Jozwiak's posting the Notice on his door—constituted a summary eviction and dispossessed him from his home. The Notice that was posted on Marcavage's residence at the Stewart Avenue Property, on September 30, 2009, stated:

### NOTICE

This Structure has been Declared an
<u>Unlawful Rental Property</u>
for failure to obtain the required rental license.
It is Unlawful for Landlord to collect any Rent, Use, or
Occupy This Building After 9/30/09 or until a rental license has been
obtained from the Borough of Lansdowne.
Any Unauthorized Person Removing This Sign
WILL BE PROSECUTED.

Pl.'s Counter-Statement of Undisputed Facts ¶ 16.  Defendants argue that Marcavage's property was not seized as a result of this Notice because Marcavage was not forced off his property, but instead left voluntarily.  Marcavage asserts that because the Notice states that "[i]t is Unlawful for Landlord to . . . Occupy This Building After 9/30/09," he was dispossessed from his home and forced to go to a hotel and then the house of some acquaintances over the course of five days.

A review of Marcavage's history with Ordinance 1188 will demonstrate that the true effect of this Notice was to formally notify Marcavage that, after many years of non-compliance, he was violating Ordinance 1188.  It was not to evict him from or seize his property.  Ordinance 1188, enacted in 2003, required owners of rental property to register and obtain a rental license for their properties through the Code Department.  Lansdowne Code § 265-3, -4.  A property owner's receipt of a rental license for a property was predicated on a Code Enforcement Officer's having inspected the owner's rental property.  <u>Id.</u> § 265-4.  The Ordinance defined "Rental Property" to include owner-occupied portions of rental property, like Marcavage's residence at the Stewart Avenue Property.  <u>See id.</u> § 265-2 ("Owner Occupied Portions Rental Properties [sic] - Areas or portions of a rental property that are used or occupied primarily by the property owner."); <u>id.</u> ("Rental Property - A premises, property or portion thereof, that is under a rental

19

agreement and/or contains one or more rental units."). As such, the Ordinance conditioned receipt of a rental license not only on the inspection of rental units, but also on the inspection of owner-occupied portions of rental properties. Id. § 265-4(D). Without first obtaining a rental license from the Code Department, it was "unlawful for the owner of any premises . . . to operate, rent or lease any premises or any part thereof, whether granted or rented for profit or nonprofit, or to represent to the general public that a premises or any part thereof is for rent, lease or occupancy . . . ." Lansdowne Code § 265-4.

Marcavage has owned his properties since the enactment of Ordinance 1188, and admitted that he received yearly notices from the Borough that his properties needed inspection to comply with the Ordinance. Defs.' Mot. Summ. J. Ex. D, Marcavage Dep. 50:23-52:24. Over this time period, however, Marcavage did not request an inspection, and, in turn, did not receive a rental license. Instead, Marcavage contacted the Borough on multiple occasions, by phone and by email, to express his objections with the rental inspection process. Id. at 50:3-52:18, 60:11-61:4. In one particular email, on August 15, 2008, Marcavage "urge[d]" Jozwiak "to cease and desist from pursuing legal action against landlords at this point for non-compliance to [Ordinance 1188] that is clearly unconstitutional." Am. Compl. Ex. D. Marcavage, therefore, was openly non-compliant with Ordinance 1188 from 2003 until he received the Notice on September 30, 2009.

Given that Marcavage was maintaining his properties in violation of the Ordinance, Jozwiak could, "in addition to other remedies, institute in the name of the Borough any appropriate action or proceedings to prevent, restrain, correct or abate [any Building violating the Code] or to prevent . . . any act, conduct, business or use constituting such violation."

20

Lansdowne Code § 265-10(C).  Jozwiak did act, in accordance with Sections 265-4 and 265-10(C), by posting Notices on both of Marcavage's properties, informing Marcavage that it would be "unlawful for [him] to collect any rent, use, or occupy" his properties after September 30, 2009 "or until a rental license has been obtained from the Borough of Lansdowne."  Pl.'s Counter-Statement of Undisputed Facts ¶ 16.  This Notice conforms with the language of Section 265-4 of the Code that declares it  "unlawful for the owner of any premises . . . to operate, rent or lease any premises or any part thereof . . . or to represent to the general public that a premises or any part thereof is for rent, lease, or occupancy without first acquiring" a rental license for each rental unit.  Lansdowne Code § 265-4.

Considering Marcavage's history of non-compliance with Ordinance 1188 and the language of the Ordinance, the Borough's action was modest and appropriate.  Marcavage fails to explain how such an action constitutes a "seizure" under Fourth Amendment case law.  In fact, courts have found similar actions not to constitute a seizure.  See Nikolas v. City of Omaha, 605 F.3d 539, 544-47 (8th Cir. 2010) (placarding of landowner's garage as unfit for human occupancy, after city code inspector saw that garage was going to be used in violation of city's zoning ordinance, is not a seizure under Fourth Amendment); United States v. TWP 17 R 4, 970 F.2d 984, 989 (1st Cir. 1992) (posting warrant of arrest in rem on parcel of real estate did not constitute seizure of real estate).  The Notice did not state that Marcavage would be removed from his home if he remained on the property.  It did not order him to vacate the premises, nor did it cite or refer to any judicial order of eviction.  Furthermore, Marcavage was not forced off his property by Code Enforcement Officers or in the presence of Code Enforcement Officers, but instead left voluntarily.  In order for a person to be forced off his property, the action must be

much more significant.  See, e.g., Soldal, 506 U.S. at 58-61 (holding that seizure occurred under Fourth Amendment when, in presence of deputy sheriffs lacking an eviction order, plaintiffs' mobile home was physically removed from the ground and moved to another location); Thomas v. Cohen, 304 F.3d 563, 572 (6th Cir. 2002) ("Escorting tenants from their residences in the course of effectuating an eviction . . . satisfies the requirement of 'meaningful interference' with their leasehold interest so as to amount to a seizure of their property.").

It is, therefore, an overstatement for Marcavage to claim this action to be a summary eviction order or seizure of his property.  The Notice formally informed Marcavage that his properties were unlawful rental properties, and emphasized that he would be acting in violation of the Ordinance if he continued to occupy his residence and collect rent from his other units, without first obtaining a rental license for his properties.  Thus Marcavage's as-applied challenge to Ordinance 1188 based on a violation of his Fourth Amendment rights fails.

*ii. Procedural Due Process*

The Fourteenth Amendment prohibits a state from "depriv[ing] any person of life, liberty, or property, without due process of law . . . ."  U.S. Const. amend. XIV.  "In analyzing a procedural due process claim, the first step is to determine whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment."  Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000) (citing Fuentes v. Shevin, 407 U.S. 67 (1972)).  "Once we determine that the interest asserted is protected by the Due Process Clause, the question becomes what process is due to protect it.  Id. (citing Morrissey v. Brewer, 408 U.S. 471, 481 (1972)).  "The essence of due process is the requirement that a person

in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it."

Mathews, 424 U.S. at 349-50 (citation and internal quotation marks omitted).

Marcavage's right to due process protection is predicated upon the existence of a deprivation of property. To establish that such a deprivation occurred, Marcavage relies exclusively on the same argument he made as to how his property was seized in violation of the Fourth Amendment—that Jozwiak's posting of the Notice on his residence dispossessed him from his home. For the same reasons already noted with regard to Marcavage's "seizure" argument, Marcavage fails to show how he was deprived of being able to remain in his home. Therefore, Marcavage's as-applied challenge to the Ordinances under the Fourteenth Amendment fails.[10]

---

[10]Marcavage also fails to explain how the Defendants' application of the Ordinance denied him adequate due process, i.e. "the opportunity to be heard at a meaningful time and in a meaningful manner." Mathews, 424 U.S. at 333 (citations and internal quotation marks omitted). Marcavage concedes that Ordinance 1188 provided for appeals of "decisions" by Code Enforcement Officers. See Lansdowne Code § 265-12 ("The owner, applicant or agent thereof may appeal a decision of the Code Enforcement Officer or request a modification of the strict letter of this chapter in accordance with the Borough Code."). He argues, however, that the Notice posted by Jozwiak was not a "decision" within the meaning of Ordinance 1188, but rather an ultra vires act outside the bounds of authority established by the Ordinance. Pl.'s Resp. 7. Marcavage complains that Ordinance 1188 did not allow him to appeal an action that the Ordinance did not permit. Id. at 7-8. The Supreme Court, though, has held that "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533 (1984). Marcavage fails to explain how the procedures provided for in Section 265-12 are an inadequate post-deprivation remedy for any alleged property loss he may have suffered from Jozwiak's actions.

### iii. Equal Protection

Marcavage fails to offer any explanation as to how his facial and as-applied challenges on equal protection grounds are different.  Marcavage has already failed to demonstrate that Ordinance 1251 is facially unconstitutional on equal protection grounds, as discussed in Section A.1., supra.  Therefore, as Ordinances 1251 and 1188 have no material differences, Marcavage has failed to establish that Ordinance 1188 violated his rights under the Equal Protection Clause.

Marcavage has failed to raise a genuine issue of material fact with respect to the constitutional invalidity of Ordinance 1251 or Ordinance 1188 under the Fourth or Fourteenth Amendments.  Therefore, Defendants' motion for summary judgment as to Marcavage's facial and as-applied challenges to the Ordinances, seeking declaratory relief and a permanent injunction, is granted.

## B. § 1983 Liability

Marcavage brings a § 1983 action against the Borough and Jozwiak for violations of the Fourth and Fourteenth Amendments, arising from the posted Notice on Marcavage's residence that allegedly dispossessed him from his home and failed to provide him any process by which he could challenge the action.

Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." Baker v. McCollan, 443 U.S. 137, 145 n.3 (1979).  "To establish a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a violation of a right protected by the Constitution or laws of the United States that was committed by a person acting under the color of state law." Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000) (en banc).  Neither party

disputes that Jozwiak was acting under the color of state law.  Therefore, the only question is whether the Defendants' actions violated Marcavage's constitutional rights under the Fourth and Fourteenth Amendments.[11]

Because Marcavage has failed to demonstrate that any violation of his constitutional rights occurred, there can be no liability for the Defendants under Section 1983.  Therefore, Defendants' motion for summary judgement as to Marcavage's § 1983 claim against the Defendants is granted.

## V. CONCLUSION

For the foregoing reasons, I will grant Defendants' motion for summary judgment, and I will deny Marcavage's cross-motion for summary judgment.

s/Anita B. Brody

_____

ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:          Copies **MAILED** on _____ to:

---

[11] Marcavage only alleges constitutional violations and does not claim that the Ordinances violated a right protected by federal statute.